## STATE v. RAY HUMBLES.

(Filed 3 November, 1954.)

**1. Criminal Law § 58—**

The ordering of a mistrial in a case less than capital is a matter in the discretion of the judge, and the judge need not find facts constituting the reason for such order.

**2. Criminal Law § 81a—**

The action of the trial court in ordering a mistrial in his discretion in a prosecution for an offense less than a capital felony is not reviewable in the absence of gross abuse.

**3. Criminal Law § 22—**

The action of the trial court in ordering, in the exercise of his discretion, a mistrial in a prosecution for an offense less than capital will not support a plea of former jeopardy in a subsequent prosecution.

**4. Criminal Law § 50d—**

Non-impeaching questions asked by the court of defendant in this case *held* not prejudicial, it being apparent that they could not have left the impression on the jury that in the judge's opinion the defendant was unworthy of belief.

**5. Criminal Law § 81c (3)—**

The exclusion of certain testimony as to a matter which was brought out on the subsequent cross-examination by defendant of another witness, *held* not prejudicial.

**6. Criminal Law § 53f—**

> Where, at the beginning of the narration of the testimony of a witness, the court uses the phrase "tending to show," it is not necessary for the court to repeat this phrase throughout the statement of her testimony, and the court's failure to do so *held* not prejudicial in this case as an expression of opinion by the court as to the truth of the witness' testimony.

APPEAL by defendant from *Williams, J.,* April Term 1954 of PITT.

Criminal prosecution on indictment charging the defendant with feloniously assaulting Mrs. Wyatt Gardner with a deadly weapon, to wit: a tractor, with intent to kill her and inflicting upon her serious injuries not resulting in death.

The defendant and Mrs. Gardner are brother and sister: defendant's wife is the sister of Mrs. Gardner's husband. The case before us originated in a family dispute over possession of a three-acre piece of land which the defendant had put a fence around, sowed with lespedeza and put his cows in. Mrs. Gardner and her husband contended they had rented this piece of land, and were entitled to its possession. Defendant contended he had leased this piece of land, and was in rightful possession. This land was opposite the house where the Gardners lived.

The State's evidence tended to show these facts: On the morning of 29 May 1953 the defendant drove his tractor with a mowing machine attached on this piece of land, and began mowing lespedeza. Mrs. Gardner picked up an axe, went to the land, knocked down every post to the fence surrounding the land, and left the fence lying on the ground. The defendant kept on mowing. Mrs. Gardner's husband arrived, and told the defendant that two years ago he had forbidden him, the defendant, from using this land. The defendant, after a little more mowing, turned his tractor around, and intentionally drove his tractor against and upon Mrs. Gardner fracturing her leg at the knee and inflicting other painful injuries. When the tractor approached Mrs. Gardner, she stood as stiff as a board. Whereupon a fight ensued between Mrs. Gardner, her husband and the defendant. Mrs. Gardner said her husband "whipped the pure dust out of him."

The defendant offered evidence tending to show these facts: That he did not run his tractor into or upon the body of Mrs. Gardner. That while he was mowing, Wyatt Gardner ran up and struck him on the head with a wrench; that Mrs. Gardner grabbed him by the shirt collar. That he jumped off the tractor, and "slammed them down." That he then got back on the tractor, and finished mowing.

The defendant's case was consolidated for trial with a case against Wyatt Gardner and his wife for assaulting the defendant.

Verdict: Guilty as to Ray Humbles of assault with a deadly weapon; Not Guilty as to Mr. and Mrs. Wyatt Gardner.

Judgment was pronounced upon the verdict.

The defendant appeals, assigning error.

*Harry McMullan, Attorney General, and Claude L. Love, Assistant Attorney General, for the State.*

*Albion Dunn and L. W. Gaylord, Jr., for Defendant, Appellant.*

PARKER, J.   At the November Term 1953 of Pitt County Superior Court, His Honor J. Paul Frizzelle presiding, the defendant was called for trial upon the indictment in the instant case; he pleaded Not Guilty, and a jury was properly impaneled.   After the trial had proceeded at some length, and evidence had been offered by the State, Judge Frizzelle withdrew a juror, and ordered a mistrial.   Judge Frizzelle found no facts. The defendant did not except.   It is obvious that Judge Frizzelle ordered the mistrial in his discretion in order that the case of the defendant for assaulting Mrs. Gardner and the case of Wyatt Gardner and his wife for assaulting Ray Humbles might be tried together.   When the defendant's case was called for trial at the April Term 1954, he entered a plea of former jeopardy and Not Guilty.   The plea of former jeopardy was denied, and the defendant excepted, and assigns it as error.

The ordering of a mistrial in a case less than capital is a matter in the discretion of the judge, and the judge need not find facts constituting the reason for such order.   *S. v. Dove,* 222 N.C. 162, 22 S.E. 2d 231; *S. v. Guice,* 201 N.C. 761, 161 S.E. 533; *S. v. Upton,* 170 N.C. 769, 87 S.E. 328; *S. v. Andrews,* 166 N.C. 349, 81 S.E. 416; *S. v. Bass,* 82 N.C. 570; *S. v. Sheppard Johnson,* 75 N.C. 123.   The judge's action is not reviewable—a position undoubtedly sound, unless under circumstances establishing gross abuse; a case not presented by this Record.   *S. v. Guice, supra; S. v. Andrews, supra; S. v. Bass, supra.*

In capital cases only is the judge required to find the facts and place them on record, so that if a plea of former jeopardy is entered, the action of the court may be reviewed; a practice based on the innate sense of justice of the common law—no man shall be twice put in jeopardy of life and limb.   The word "limb" having reference to the barbarous punishment, which has now become obsolete, of striking off the hand.   Coke Litt., 227; 3 Inst. 110; *S. v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243; *S. v. Dove, supra; S. v. Guice, supra; S. v. Tyson,* 138 N.C. 627, 50 S.E. 456; *S. v. Sheppard Johnson, supra.*

The defendant's assignment of error to the denial of his plea of former jeopardy is overruled.

The defendant assigns as error No. 2 that the trial judge by the questions he asked the defendant, when he was testifying in the case, conveyed to the jury the impression that the defendant was not worthy of

belief, especially as he asked Mrs. Gardner only two questions and her husband none. The judge on four occasions asked questions of the defendant. *First,* the defendant had said Wyatt Gardner and his wife had not asked him to take the fence down around this three-acre piece of land; he did not know there was a controversy about the land when he put the fence up. Mrs. Gardner had previously testified as to a controversy about this land between her husband, herself and defendant before the fence was erected. The judge asked the defendant: "Q. Anything said to your wife about it in your presence? A. No Sir." The defendant did not object. *Second,* after more testimony by the defendant he said he did not deliberately aim at Mrs. Gardner with his tractor and run over her; that he didn't go anywhere near her with the tractor; doesn't know how she got on his (her husband's) tractor. At this place the judge asked defendant these questions: "Q. Where was she the last time you saw her? A. She was at the path; he was turning the tractor around getting her up. Q. What position was she in? A. I couldn't say. Q. What do you mean 'getting her up'? A. She was getting up on the tractor, and he was getting down off the tractor." The defendant objected and excepted to these questions. These questions refer to Wyatt Gardner carrying his wife out of the field on a tractor he had procured from his home, after his wife had sustained a fractured knee. The judge asked the defendant the questions on these two occasions when the defendant was being cross-examined by S. O. Worthington, attorney for the Gardners. *Third,* when the defendant was being re-examined by his attorney, he testified he had leased this land in 1949. Whereupon the judge asked this question: "Q. You leased it in 1949 and didn't lease it after that? A. Yes." The defendant made no objection. There was re-cross-examination by S. O. Worthington, and then defendant's lawyer examined him again. *Fourth,* the defendant then said he leased the land from Mrs. N. O. Gardner. Whereupon the judge asked this question: "Q. When did you say you leased it? A. I disremember. I believe it was in 1950 I tended it. Q. I understand you tended it that year, and didn't lease it any more, is that right? A. I tended it one year, and my boy went in the Army in Korea, and he was gone two years, and has been back one year, and this is the second year."

On direct examination Mrs. Gardner said: "After I knocked down all the posts he (the defendant) got off his tractor after he drove up to where I was and said: 'What are you tearing down my fence for?'" The judge then asked Mrs. Gardner: "Where were you then?" Later on Mrs. Gardner testified that after her knee was fractured and the fighting was over, her husband helped get her to the path, and she told him put me down, I am about to faint. Then the judge asked: "Q. Did he hear what you told your husband? A. Yes Sir. Q. What did you tell him? A. I said: 'Honey, hurry to the house and get the tractor; I am about to faint.'"

In our opinion, and we so hold, the questions asked by the judge and the evidence brought out could not have created in the minds of the jury the impression that in the judge's opinion the defendant was unworthy of belief. The questions did not impeach him. We do not see how it could have affected the jury's verdict. Prejudicial error is not made to appear. *S. v. Perry,* 231 N.C. 467, 57 S.E. 2d 774. Assignment of error No. 2 is overruled.

On cross-examination of Wyatt Gardner by defendant's counsel, he asked this question: "Q. You heard your wife say she stood there, and wanted to see if he had nerve enough to run over her?" The objection of the State was sustained, and the defendant excepted. This is his assignment of error No. 3. What the witness would have answered, if permitted to do so, is not in the Record.

On cross-examination of Mrs. Wyatt Gardner by defendant's counsel she testified she was standing in the field, after she had torn the posts down, and her husband said "look out." She "looked him (the defendant) right in the face, and he (the defendant) looked me right in the face, and come with the tractor right at me. I stood right there, stiff as a board. . . . he run on me with the tractor."

It would seem that the court's refusal to permit Wyatt Gardner to answer the question was harmless in the light of Mrs. Gardner's replies to defendant's counsel on cross-examination.

The defendant's assignments of error Nos. 4, 5, 6 and 7 are that the judge in his charge in stating the testimony of Mrs. Gardner began by saying the State says and contends that you ought to find beyond a reasonable doubt that the defendant Ray Humbles and the defendants Wyatt Gardner and wife are each guilty as charged in the indictment, "and in support of its contentions offers evidence tending to show in the case of Ray Humbles in the testimony of Mrs. Gardner . . ." The defendant contends that the judge in stating Mrs. Gardner's testimony did not again inject the phrase that Mrs. Gardner's testimony tended to show; that this created in the minds of the jury the impression that the judge thought every statement made by Mrs. Gardner had been proved as a fact.

A reading of the charge in its entirety shows that in stating the testimony of the other witnesses, the judge used the same formula. For instance, "in the case against Mrs. Gardner and Wyatt Gardner, and testifying in his own behalf Ray Humbles offered evidence tending to show etc.," and in narrating Humbles' testimony did not repeat the words, "tending to show." The statement of the testimony of Mrs. Gardner in the charge covers a little over 2¾ pages, and the statement of the testimony of the defendant not quite 2 pages.

In *S. v. Holbrook,* 232 N.C. 503, 61 S.E. 2d 361, the defendant assigned as error the failure of the judge to repeat the words beyond a reasonable

doubt every time he used the words if the State has satisfied you from the evidence. *Stacy, C. J.,* speaking for the Court said: "However, as this was given at the beginning of the charge and repeated several times thereafter, the jury could hardly have been misled by the court's failure to repeat it each time a finding from the evidence was to be made."

The defendant did not object to the court's statement of Mrs. Gardner's testimony, while the charge was being delivered. The judge clearly stated at the beginning of his statement of Mrs. Gardner's testimony that her testimony tended to show, etc. It was not necessary for him to repeat the phrase, while narrating her testimony. The contention of the defendant is unsound. Assignments of error Nos. 4, 5, 6 and 7 are not sustained.

Defendant's other assignments of error have been examined, and are overruled.

On the Record as presented, no reversible error has been made manifest. No error.